## Phipps v. Mellon

*Walter Phipps, Jr.*, for plaintiff.
*Francis T. Dennis*, for defendant.

GROSHENS, J., December 23, 1958.—This is an action in mandamus brought by the chief of police against the burgess and borough council alleging illegal removal from office and seeking reinstatement thereto. Defendant filed an answer denying illegality and alleging the action of removal was within the borough's governmental powers.

Plaintiff's motion for judgment on the pleadings is before the court en banc for disposition.

From the pleadings, it appears plaintiff entered the police force of the borough on April 13, 1932, as a patrolman. On January 4, 1938, he was advanced to

the rank of chief of police. On July 15, 1958, he was removed from the office of chief of police and from the service of the police force pursuant to the following three motions adopted by borough council at a regular meeting thereof on July 9, 1958:

(a) "that all officers after having twenty years of service with the Borough shall retire after having attained the age of sixty years;"

(b) "that the Borough Solicitor be instructed to amend Section 6 of the Police Pension Fund Ordinance in compliance with the previous motion," and

(c) "that Walter Phipps, Sr., be notified that he will be retired as a police officer on July 15, 1958, and that he be granted three weeks vacation with pay".

Plaintiff contends in his brief and oral argument that: (a) Defendants are without legal authority to compel a police officer who has 20 years service to retire at age 60; (b) defendants are without legal authority to fix a compulsory retirement age by a motion of council; and (c) defendants abused their discretion under the circumstances.

A study of the statutes relating to pension funds for borough police leads us to the conclusion that council and the burgess were without legal authority to terminate plaintiff's services as they did.

The first enabling statute for borough police pension funds, being the Act of May 24, 1893, P. L. 129, sec. 1, provided in part: "Such ordinance *may prescribe* a minimum period of continuous service, not less than twenty years, after which members of the force *may be retired* from active duty . . ." (Italics supplied.)

The Act of May 14, 1915, P. L. 312, ch. VII, art. VI, sec. 22, (repealed), provided in part: "The ordinance establishing the police pension fund *may prescribe* a minimum period of continuous service, not less than

twenty years, after which members of the force *may be retired* from active duty . . ." (Italics supplied.)

The General Borough Act of May 4, 1927, P. L. 519, art. XI, sec. 1132, provided in part: "The ordinance establishing the police pension fund may prescribe a minimum period of continuous service, not less than twenty years, after which members of the force *may be retired* from active duty . . ." (Italics supplied.)

The Borough Code of July 10, 1947, P. L. 1621, sec. 1132, an amendment of The General Borough Act of 1927, provided in part: "The ordinance establishing the police pension fund *may prescribe* a minimum period of continuous service, not less than twenty years, after which members of the force *may be retired* from active duty . . ." (Italics supplied.)

The Act of July 19, 1951, P. L. 1026, sec. 1, amending section 1132, supra, of The Borough Code of 1947, provided in part: "The ordinance establishing the police pension fund *shall prescribe* a minimum period of total service, not less than twenty years, after which members of the force *may be retired* from active duty . . ." (Italics supplied.)

Section 1132, as amended, of The Borough Code of 1947, is repealed by the Act of May 29, 1956, P. L. (1955) 1804, sec. 3, 53 PS §769, which provided in part: "Each ordinance or resolution establishing a police pension fund *shall prescribe* a minimum period of total service not less than an aggregate of twenty-five years in the same borough . . . and *a minimum age of sixty years* after which members of the force *may retire* from active duty . . ." (Italics supplied.)

The Act of July 10, 1957, P. L. 676, sec. 1, 53 PS §769, amending section 3 of the Act of May 29, 1956, supra, provides in part: "Each ordinance or resolution establishing a police pension fund *shall prescribe* a minimum period of total service not less than an aggregate of twenty years in the same borough . . . and

*shall fix the age of the members of the force at sixty years after which they may retire* from active duty, . . .". (Italics supplied.)

The Acts of 1956 and 1957, supra, are the first statutes compelling boroughs to establish and maintain police pension funds.

Payments from the pension fund under the Act of 1956 were postponed until January 1, 1958, and the conclusion is inescapable that the amendment of July 10, 1957, was enacted to correct the defects or inadequacies in the Act of 1956 before any payments were made from funds established under the Act of 1956.

The Act of 1957 compelled borough council to "fix the age of the members of the force at sixty years after which *they may retire* from active duty" (Italics supplied.)

In spite of the mandatory language of the Act of 1957, borough council on July 9, 1958, adopted the motion "that all officers after having twenty years of service with the borough shall retire after having obtained the age of sixty years", and on July 14, 1958, the burgess notified plaintiff he was relieved of any further duties on the police force as of July 15, 1958.

In the five statutes enacted between 1893 and 1956 the General Assembly said a borough *"may prescribe"* a minimum period of service "after which members of the force *may be retired* from active duty." (Italics supplied.)

In the Act of 1956, the General Assembly said a borough *"shall prescribe"* not only a minimum period of service, but "a minimum *age of sixty years,* after which members of the force may retire from active duty." (Italics supplied.)

In the Act of 1957, the General Assembly said a borough *"shall fix* the age of the members of the force

at *sixty years* after which *they may retire* from active duty." (Italics supplied.)

Therefore, it must follow that the General Assembly intended police officers may be retired from active duty by a borough only at some age greater than 60 years.

A borough may by ordinance fix the age of compulsory retirement, provided the ordinance is reasonable, general and nondiscriminatory, and, further provided, the age so fixed is greater than 60 years.

It is clear that the General Assembly, which is the source of the borough's power, has preëmpted age 60 for voluntary retirement, and it requires the citation of no authority to hold that a borough may not oust the General Assembly from an area already occupied by its statutes.

The establishment of an actuarially sound pension plan at a reasonable cost for a small police force (here 10 officers, including plaintiff) is difficult. It is a matter of common knowledge that pension plans, even in large groups, require close and intricate computations which are delicately balanced upon certain general assumptions, and that among those assumptions are the age of voluntary retirement and the age of compulsory retirement. The General Assembly has anchored one of those basic assumptions at age 60. The borough is free to fix a compulsory retirement age above the statutory voluntary retirement age as long as the ordinance is reasonable, general and nondiscriminatory, and there are no political, religious or personal motives behind its enactment.

In passing we point out that a pension plan for 10 police officers calculated on a compulsory retirement age of 65 years, may be dealt a serious blow by the mere reduction to age 60 without the counterbalancing adjustment of other factors such as charges and benefits.

We also note in passing that the duties of a chief of police may not demand the same degree of physical vigor, strength and endurance as the duties of a patrolman, and that while age 60 may be a reasonable age for the compulsory retirement of a patrolman, it does not follow that age 60 is a reasonable age for the compulsory retirement of a chief of police. On many occasions the commander-in-chief of the armed forces of the United States has been a man well beyond three score years.

The cases of Boyle v. Philadelphia, 338 Pa. 129, and Soltis Appeal, 390 Pa. 416, relied upon by defendants, are clearly distinguishable on the law from the case at bar. For instance, in Soltis Appeal, The Third Class City Code of June 23, 1931, P. L. 932, art. XLIII, sec. 4302, as amended by the Acts of May 2, 1949, P. L. 816, sec. 1, and June 28, 1951, P. L. 662, sec. 43, is substantially different from the foregoing legislation herein discussed.

On the pleadings this is not a dismissal based upon misconduct, incompetence or political affiliation or for economy, but retirement based upon age. Merely because plaintiff has attained a civil service status under The Borough Code does not guarantee to him life tenure.

The express power of borough council to establish and maintain a police department by implication gives borough council the power to prescribe reasonable and nondiscriminatory superannuation classifications for police officers in those areas not occupied by statute.

The express power of borough council to establish and maintain a police pension fund by implication gives borough council the power to take care of the details of administration of the fund and of the benefits, which are necessary to the orderly and proper functioning of a pension fund, and which are not in areas already legislated upon by the Commonwealth.

It, therefore, seems to us on the pleadings that neither borough council nor the burgess has infringed upon rights secured to plaintiff under civil service.

We are, however, firmly of the opinion that both borough council and the burgess has infringed upon rights secured to plaintiff, that the motions of borough council adopted on July 9, 1958, and the action of the burgess taken pursuant thereto violate the borough police pension fund laws, and are, therefore, null and void, and of no legal effect.

## Order

And now, December 23, 1958, it is ordered, adjudged and decreed that judgment be entered on the pleadings for plaintiff, that Conshohocken Borough Council and the Burgess reinstate plaintiff to the office of chief of police as of July 15, 1958, that plaintiff be paid his back pay forthwith from July 16, 1958, to date of reinstatement in compliance herewith, less: (1) An amount equal to the three weeks vacation pay given to plaintiff on or about July 15, 1958; (2) pension fund charges payable by plaintiff between July 15, 1958, and the date of his reinstatement in compliance herewith; and (3) pension benefits, if any, received by plaintiff between July 15, 1958, and his reinstatement, that borough council and the burgess cause appropriate payments to be made by the borough to the pension fund required by the pension plan for the account of plaintiff, if any such payments are so required between July 15, 1958, and the date of reinstatement, and to take other necessary and appropriate steps to reinstate plaintiff's interest in the pension fund as a contributing member, that plaintiff be reinvested with the authority appertaining to the office of chief of police, and be charged with the duties thereof, and that the Borough of Conshohocken pay the costs.