James Gruver and Russell Banta v. Glenn M. Howell, Philip Walter and Frank Lange, duly elected Supervisors of the Township of Dallas. James Gruver and Russell Banta, Appellants.
(2 Cases)

Argued October 8, 1976, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*John B. Mancke,* with him *Mancke & Lightman,* for appellants.

*Frank Townend,* with him *Hugh J. O'Connell,* and *Silverblatt & Townend,* for appellees.

OPINION BY JUDGE BLATT, January 21, 1977:

James Gruver and Russell Banta (appellants) were employed as permanent full-time police officers in the Dallas Township Police Department (Department) for periods in excess of three years and two years respectively. On December 31, 1974, both were informed that for reasons of economy the Dallas Township Board of Supervisors (Board) had decided to reduce the number of police officers of the Department from eight to five and that they and another officer were being furloughed immediately. On January 6, 1975, they brought actions in equity and mandamus against the Dallas Township Supervisors in the Court of Common Pleas of Luzerne County contending that their employment had been illegally terminated and requesting reinstatement and damages. The two actions were consolidated for trial after which the lower court dismissed both complaints. The appeals from the dismissal of the two complaints are herein consolidated.

Our scope of review in equity matters is a narrow one. The findings of fact of the chancellor will be reversed only where there has been manifest or clear error or abuse of discretion. The chancellor's decision will stand if there exists sufficient evidence to justify the findings and the reasonable inferences and conclusions derived therefrom. *Groff v. Borough of Sellersville*, 12 Pa. Commonwealth Ct. 315, 314 A.2d 328 (1974). The appellants argue here: (1) that their termination was not for reasons of economy but rather in retaliation for prior arbitration of a wage dispute with the police department, and (2) that the procedure used to effect the reduction in the force was improper.

The Act of June 15, 1951, P.L. 586, *as amended,* 53 P.S. §811 et seq., (commonly known as the Police

Tenure Act) provides in Section 3, 53 P.S. §813, as follows:

> If, for reasons of economy or other reasons, it shall be deemed necessary by any township of the second class . . . to reduce the number of paid employes of the police department, then such political subdivision shall apply the following procedure: . . . (b) . . . reduction shall be effected by furloughing the man or men . . . last appointed to said police force. Such removal shall be accomplished by furloughing in numerical order, commencing with the man last appointed, until such reduction shall have been accomplished.

The appellants here were admittedly the officers last appointed to the Department. They argue, however, that the termination of their services was required not for reasons of economy but rather to penalize them and their police officer colleagues for forcing the township to enter into arbitration over a wage dispute. They attempted to support this argument by contending that the financial condition of the township was such that no economies were necessary and that in fact no economy was realized by the furloughs.

The appellants point to a substantial amount of evidence in the record that the township was comfortably solvent and state that under these circumstances the township could not look to Section 3 for authority to reduce its police force. Underlying this contention is their belief that the phrase "for reasons of economy or other reasons" in Section 3 limits action to circumstances of financial crises. We, however, have differently interpreted the identical phrase in a similar statute[1] in the recent case of *Genes v.*

---

[1] Section 11 of the Act of May 31, 1933, P.L. 1108, (commonly known as the Firemen's Civil Service Act), *as amended*, 53 P.S. §39871.

*City of Duquesne*, 27 Pa. Commonwealth Ct. 620,
A.2d    (1976).  Judge KRAMER stated in *Genes* that
" '[r]easons of economy' would include ... a saving of
money by the removal of unneeded employees, regard-
less of the financial condition of the City.  The phrase
'for ... other reasons' would authorize the removal of
unneeded employees for reasons other than that of ef-
fecting fiscal economics, such as, to improve effi-
ciency."  We believe that this interpretation is equally
applicable here and that the township was free to act
under this section to remove the appellants as un-
needed employees for reasons of economy regardless
of its financial condition.

The appellants also contend that the reduction in
force was ordered only as retaliation for the arbitra-
tion forced by the police and point out that no econ-
omy was actually realized by the furloughs.  They
note that, at the same time when the appellants here
were furloughed, the township hired four persons in
newly created positions known as police communica-
tion clerks.  These clerks were hired to operate the
police communications network, a task formerly
shared by the officers on duty at the time, and the
appellants contend that, because the combined salaries
of the clerks was greater than the salary expense
saved by the furloughs, no economy was actually
realized.  We find it unnecessary to detail the appel-
lants' mathematical computations supplied to support
this contention, for our careful review of the record
confirms the lower court's finding that the furlough-
ing actually did result in a significant financial sav-
ings for the township.

There is little evidence in the record that the Board
acted to reduce the size of the police department for
any reasons other than economy and increased effi-
ciency.  The only testimony concerning the wage ar-

bitration is a statement reportedly made by one of the supervisors that "he didn't get mad about it [the arbitration], he just got even". We agree with the lower court that the most this statement amounted to was a mere suggestion of possible bad faith on the part of one supervisor. This suggestion was effectively counterbalanced by the testimony of several other supervisors that the reduction in force of the police department and the hiring of the communications clerks had been under consideration for a number of years. In the absence of evidence to the contrary, we must presume that public officials have acted with regularity, *Gabriel v. Trinity School District*, 22 Pa. Commonwealth Ct. 620, 350 A.2d 203 (1976), and the appellants here have not presented sufficient evidence of bad faith on the part of the supervisors to rebut this presumption. We must, therefore, find their argument that the furloughs were in retaliation for the prior wage arbitration to be without merit.

The appellants argue finally that the procedure by which they were furloughed was improper. Our review of the record establishes that the township correctly followed the procedure outlined in Section 3, 53 P.S. §813, in furloughing the appellants and we can find no action of the township that prejudiced any right of the appellants.

The order of the lower court dismissing the complaints of the appellants is, therefore, affirmed.

ORDER

And Now, this 21st day of January, 1977, the order of the Court of Common Pleas of Luzerne County of January 15, 1976, dismissing the complaints of James Gruver and Russell Banta are hereby affirmed.